IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Magistrate Judge Boyd N. Boland

Civil Action No. 12-cv-02465-MSK-BNB

DAVID LEMAR POWELL,

      Applicant,

v.

ANGEL MEDINA, Warden, Fremont Correctional Facility, and
THE ATTORNEY GENERAL OF THE STATE OF COLORADO,

      Respondents.

---

RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

---

This matter arises on the Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 [Doc. # 1] ("the Application"), filed by David Lemar Powell ("the petitioner") on September 17, 2012.  I respectfully RECOMMEND that the Application be DENIED.

## I. THE LAW

The petitioner is proceeding pro se, and I must liberally construe his pleadings. *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972). I cannot act as advocate for a pro se litigant, however.  *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir.1991).

This court may review the petitioner's application for writ of habeas corpus "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).  An application cannot be granted unless it appears that the petitioner has exhausted available state remedies. 28 U.S.C.

§ 2254(b)(1).

If a petitioner exhausts his available state remedies, his application may be

granted only if the adjudication of the claim (1) resulted in a decision that was contrary

to, or involved an unreasonable application of, clearly established federal law, as

determined by the Supreme Court of the United States; or (2) resulted in a decision that

was based on an unreasonable determination of the facts in light of the evidence

presented in the state court proceeding.  28 U.S.C. § 2254(d).  Factual determinations

made by the state court are presumed correct unless rebutted by clear and convincing

evidence. 28 U.S.C. § 2254(e)(1).

## II. BACKGROUND

The Colorado Court of Appeals summarized the background facts and state court

procedural history as follows:

> [Petitioner] was charged with one count of first degree sexual
> assault in connection with an alleged sexual assault that occurred on the
> evening of January 30, 2000.  He was also charged with three habitual
> criminal counts based on prior felony drug convictions. [Petitioner's]
> theory of defense was that he had consensual sex with the victim.  A jury
> found him guilty on the sexual assault count, and the trial court
> subsequently found him guilty on two of the habitual criminal counts.  On
> appeal, a division of this court reversed his conviction, vacated his
> habitual criminal adjudication, and remanded the case for a new trial.
> *People v. Powell*, (Colo. App. No. 04CA0475, Feb. 16, 2006) (not
> published pursuant to C.A.R. 35(f)) (*Powell I*). . . .
>
> A second trial was held in August 2007, and the jury again returned
> a guilty verdict on the count of first degree sexual assault. The court then
> tried [petitioner] on the three habitual criminal counts. Because the court
> found that the prosecution had carried its burden of proof on two of the
> prior felony drug convictions, the court adjudicated [petitioner] as a
> habitual criminal and sentenced him to an indeterminate prison term of
> thirty-six years to life in the Department of Corrections (DOC). . . .

[Doc. # 14-4, at 2-3].

The Colorado Court of Appeals affirmed petitioner's 2007 sexual assault conviction in *People v. Powell* (*Powell II*), 07CA1896 (Colo. App. Dec. 10, 2010) (unpublished) [Doc. # 14-4].  The Colorado Supreme Court denied certiorari review on October 11, 2011.

On March 5, 2012, petitioner filed a motion for post-conviction relief pursuant to Colo. R. Crim. P. 35(c). [Doc. # 14-1, at 2].  The state trial court denied the motion on March 8, 2012.  [*Id.*].  Petitioner did not file an appeal.  Instead, he filed a motion for reconsideration on March 21, 2012, which the trial court denied on March 26, 2012. [*Id.*].  Petitioner did not appeal from that order.

Petitioner initiated this action on September 17, 2012. [Doc. # 1].  He asserts three claims in the Application: (1) the prosecutor violated his right to a fair trial and to an impartial jury by eliciting testimony that witnesses were truthful; (2) the prosecutor violated his right to a fair trial by questioning biased potential jurors in the presence of the venire; and, (3) the evidence was insufficient to support his habitual criminal convictions.

### III.  ANALYSIS

The respondents concede that the Application is timely and that the petitioner has exhausted state court remedies for his claims. [Doc. #  14, at 5, 7-8].  Therefore, the Application can be granted only if the adjudication of the petitioner's claim resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States, or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d).

Pursuant to § 2254(e)(1), the court must presume that the state court's factual determinations are correct and the petitioner bears the burden of rebutting the presumption by clear and convincing evidence.

## A.  Claim One

Petitioner asserts in his first claim that the prosecutor violated his right to a fair trial by eliciting police officer testimony vouching for the truthfulness of the victim and her parents.  [Doc. # 1, at 5].

The United States Supreme Court has not addressed the specific question of whether  vouching testimony runs afoul of the Due Process Clause of the Constitution. *See Parker v. Scott*, 394 F.3d 1302, 1310 (10th Cir. 2005).  The Tenth Circuit recently summarized the case law governing § 2254 claims involving the admission of evidence that is alleged to have been so unfairly prejudicial as to violate due process:

> In *Payne v. Tennessee*, 501 U.S. 808, 825 (1991), the Supreme Court held that when a state court admits evidence that is "so unduly prejudicial that it renders the trial fundamentally unfair, the Due Process Clause of the Fourteenth Amendment provides a mechanism for relief." And in *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991), the Court made clear that this principle holds true regardless of whether the evidence at issue was properly admitted pursuant to state law.

*Lott v. Trammell*, 705 F.3d 1167, 1190-1191 (10th Cir. 2013) (parallel citations omitted).

*See also Lisenba v. California*, 314 U.S. 219 (1941) ("In order to declare a denial of [due process] we must find that the absence of [fundamental] fairness fatally infected the trial; the acts complained of must be of such quality as necessarily prevents a fair trial.")

"Inquiry into fundamental fairness requires examination of the entire proceedings, including the strength of the evidence against the petitioner . . . ." *Le v. Mullin*, 311 F.3d 1002, 1013 (10th Cir. 2002) (citing *Donnelly* v. *DeChristophoro*, 416 U.S. 637, 643

(1974)).  In conducting this fundamental fairness examination, the federal habeas court

does not "second guess a state court's application or interpretation of state law . . .

unless such application or interpretation violates federal law." *Bowser v. Boggs*, 20 F.3d

1060, 1065 (10th Cir. 1994); *see also Boyd v. Ward*, 179 F.3d 904, 912 (10th Cir. 1999).

A federal habeas court can consider defense counsel's actions, including failures to

object at trial.  *Le*, 311 F.3d at 1013 (citing *Trice v. Ward*, 196 F.3d 1151, 1167 (10th

Cir. 1999)).

     The Colorado Court of Appeals rejected petitioner's claim on the following

grounds:

> [Petitioner] contends two prosecution witnesses, Detective Kern
> and Officer Ragland, impermissibly vouched for the truthfulness of other
> witnesses. We disagree.
> . . .
>
> . . . [E]videntiary issues not brought to the trial court's attention by a
> contemporaneous objection can only be reviewed for plain error.  Crim. P.
> 52(b); . . . . Plain error requires the [petitioner] to show not only that the
> error affected a substantial right, but that there is a reasonable probability
> that the error so undermined the fundamental fairness of the trial as to
> case serious doubt on the reliability of the judgment of conviction. [State
> case law citations omitted].
>
> Neither a lay nor expert witness may give opinion testimony with
> respect to whether a witness is telling the truth on a specific occasion.
> [State case law citation omitted].  Such vouching testimony is generally
> improper and inadmissible, in part because it infringes upon the province
> of the fact finder. [State case law citations omitted].
>
> As to Detective Kern, who was one of the investigating officers on
> the case, [petitioner] points to two statements in his testimony at trial
> where Kern allegedly vouched for the truthfulness of the victim's parents
> on a particular occasion. In that regard, Kern stated that he believed the
> victim's parents' statements that they did not tell another detective that the
> victim was in a mental institution (contrary to the other detective's
> testimony). [Petitioner] did not object to the statements at trial.

After reviewing Kern's entire testimony, we question whether his statements constituted improper vouching at all, because they were made in the context of explaining the course of his investigation. Nevertheless, assuming without deciding that the two challenged statements were improper vouching testimony, we conclude that [petitioner] cannot establish plain error because there is no reasonable probability that these two isolated statements by Kern undermined the fairness of the trial or cast doubt on the reliability of the conviction. [State case law citations omitted].

Nothing in the record or in [petitioner's] theory of defense at trial indicates that the victim's mental health had any bearing on her credibility at trial or more broadly on the issue of [petitioner's] guilt or innocence. Thus, admission of Kern's two challenged statements is not plain error justifying reversal of the conviction.

As to Officer Ragland, [petitioner] claims that Ragland testified that the victim was telling the truth when she was interviewed at the hospital after the alleged assault. According to [petitioner], Ragland's opinions that the victim was speaking for herself and that she was not withholding information from him or trying to please a close friend who was with her at the hospital constituted improper vouching testimony.

We have reviewed Ragland's testimony, and in our view, Ragland did not comment directly or indirectly on the victim's truthfulness or credibility on a specific occasion.  [State case law citations omitted]. Because we conclude that, as a matter of law, Ragland did not vouch for the truthfulness of the victim, we need not resolve the parties' dispute as to whether defense counsel properly preserved this specific vouching issue for review.

[*Powell II*, Doc. # 14-4, at 20-23].

## 1.  *Application of Procedural Default Doctrine*

Respondents contend, in a footnote in the Answer brief, that the state appellate court's application of Colorado's plain error rule "means that claim one is procedurally defaulted." [Doc. # 32, at 13].  Respondents previously conceded, in the pre-answer response, that petitioner properly exhausted state remedies for claim one. Notwithstanding, respondents assert in the Answer that the claim is procedurally barred

because the state appellate court resolved it under the State' plain error rule, without reaching the merits of the constitutional issue.[1] [Doc. # 23, at 18].

"[S]tate-court procedural default . . . is an affirmative defense," and the state is "obligated to raise procedural default as a defense or lose the right to assert the defense thereafter." *Gray v. Netherland*, 518 U.S. 152, 165–66 (1996). Although respondents did not raise a procedural default defense in their Pre-Answer Response, because they did not affirmatively waive the defense, they may amend their initial response to the Application and assert a procedural default defense in their Answer to the merits. *See Ahmad v. Furlong*, 435 F.3d 1196, 1202 (10th Cir. 2006) (the "best procedure is to plead an affirmative defense in an answer or other amended answer"); *Day v. McDonough*, 547 U.S. 198, 202 (2006) ("Ordinarily in civil litigation, a statutory time limitation is forfeited if not raised in a defendant's answer or in an amendment thereto."); *cf. Wood v. Milyard*, 132 S.Ct. 1826, 1834-35 (holding that Tenth Circuit abused its discretion in dismissing habeas petition as untimely where, in the district court, the State twice informed the District Court that it would not "challenge" the timeliness of the petition and thereby deliberately waived the statute of limitations defense). A constructive amendment is allowed if there is no prejudice to the opposing party and the amendment is not unduly delayed, done in bad faith or with a dilatory motive. *Ahmad*, 435 F.3d at 1202. Here, petitioner was afforded an opportunity to address the defense in a Reply to the Answer, preventing any prejudice. In addition,

---

[1]Respondents' concession of exhaustion does not preclude a finding of procedural default. *See Coleman v. Thompson*, 501 U.S. 722, 732 (1991) ("A habeas petitioner who has [procedurally] defaulted his federal claims in state court meets the technical requirements for exhaustion; there are no state remedies any longer "available" to him.").

the amendment is not unduly delayed or done in bad faith or with a dilatory motive.  The respondents, therefore, are not barred from raising the procedural default affirmative defense in their Answer with respect to claim one.

When a state court reviews for plain error an issue forfeited for lack of trial objection, federal habeas review may be procedurally barred. *See Cargle v. Mullin*, 317 F.3d 1196, 1205-06 (10th Cir. 2003).  Under the procedural default doctrine, "[c]laims that are defaulted in state court on adequate and independent state procedural grounds will not be considered by a habeas court, unless the [petitioner] can demonstrate cause and prejudice or a fundamental miscarriage of justice."  *Fairchild v. Workman*, 579 F.3d 1134, 1141 (10th Cir. 2009) (internal quotation marks omitted).

 The substance of the state's plain error ruling affects my consideration of petitioner's claim.  When a "state court . . . den[ies] relief for a federal claim on plain-error review because it finds the claim lacks merit under federal law," that "disposition [is] entitled to § 2254(d) deference because it was a form of merits review." *Cargle*, 317 F.3d at 1206.  On the other hand, if "a state court den[ies] relief for what it . . . assumes to be federal error, because of the petitioner's failure to satisfy some independent state law predicate," "that non-merits predicate would constitute an independent state ground for decision which would warrant application of procedural-bar principles on federal habeas." *Id.*; *see also Douglas v. Workman*, 560 F.3d 1156, 1177–79, 1180 n. 15 (10th Cir. 2009).

With regard to Detective Kern's testimony, the state appellate court assumed without deciding that the two challenged statements were improper vouching testimony, but concluded that petitioner could not establish plain error because there was no

reasonable probability that the isolated statements by Kern undermined the fairness of petitioner's trial or cast doubt on the reliability of the conviction.  Accordingly, the state appellate court's rejection of that portion of petitioner's improper vouching claim was not on federal grounds.  Instead, the state court resolved the claim under a prong of plain-error review unrelated to the federal constitutional issue.  *See e.g. Glover v. Newton-Embry*, No. 09-6165, 367 F. App'x 925, 928 (10th Cir. Feb. 26, 2010) (unpublished) (habeas petitioner's Sixth Amendment confrontation claim was procedurally barred where state appellate court assumed that the challenged statements could have been excluded pursuant to applicable Supreme Court law, but court rejected claim on a state law plain-error ground).

Because the Colorado Court of Appeals rejected petitioner's claim challenging Detective Kern's testimony on an independent state ground, the claim is barred in federal court. *See Cargle*, 317 F.3d at 1206.  This bar can be overcome only if petitioner can show cause and prejudice or a fundamental miscarriage of justice. *See Fairchild*, 579 F.3d at 1141.  However, petitioner has not suggested any cause for his attorneys' failure to object contemporaneously to Kern's improper vouching testimony.  Moreover, because petitioner has not alleged that he is actually innocent of the sexual assault, he cannot show that application of the procedural bar would create a fundamental miscarriage of justice. *See Beavers v. Saffle*, 216 F.3d 918, 923 (10th Cir. 2000) (the fundamental-miscarriage-of-justice exception requires the applicant to "make a colorable showing of factual innocence.").  Accordingly, a portion of claim one, challenging the alleged improper vouching testimony by Detective Kern, will be dismissed as procedurally barred.  In the alternative, I find that petitioner's claim is

9

without merit, for the reasons discussed in section III.A.2, *infra*.

With regard to Officer Ragland's testimony, the Colorado Court of Appeals concluded, as a matter of law, that Ragland did not vouch for the truthfulness of the victim.  Because the state court determined that the claim lacked merit under federal law, the decision is entitled to AEDPA deference and the procedural default rules do not apply. *See Mathews v. Workman*, 577 F.3d 1175, 1186 n. 4 (10th Cir. 2009) (citing *Cargle,* 317 F.3d at 1205-06).

### 2. *Merits of Claim One*

The Colorado Court of Appeals' factual finding that "Ragland did not comment directly or indirectly on the victim's truthfulness or credibility on a specific occasion" is presumed correct in this federal habeas proceeding, is supported by the state court record, and has not been rebutted by petitioner.[2] *See* 28 U.S.C. § 2254(e)(1).  I thus find that the state appellate court's determination of petitioner's claim asserting improper vouching by Officer Ragland was reasonable in light of the evidence presented at petitioner's trial. Furthermore, the state appellate court's decision comports with federal law because petitioner has not demonstrated that Ragland's testimony rendered his trial fundamentally unfair so as to deprive him of his federal due process rights.  As such, the portion of claim one challenging Ragland's testimony should be dismissed.

In addition, I have carefully reviewed the state court record and find that it was reasonable for the Colorado Court of Appeals to reject petitioner's claim as to Detective Kern's testimony because nothing in the trial transcript shows that the victim's mental

---

[2]*See* State Court R., 8/07/07 Trial Tr., at 103-108; 110-111.

health had any bearing on her credibility at trial or on the critical issue of petitioner's

guilt or innocence.  Furthermore, defense counsel failed to raise an objection at trial.[3]

*See Parker*, 394 F.3d at 1311.  Accordingly, petitioner's claim challenging Kern's

testimony is procedurally barred, and, in the alternative, without merit.

## B.  Claim Two

For his second claim, petitioner asserts that the prosecutor violated his right to a

fair trial by questioning biased potential jurors in the presence of the venire.  Petitioner

focuses his claim on the statements of four prospective jurors, referred to as jurors K, B,

P, and S.  [Doc. # 1, at 6].

The Colorado Court of Appeals set forth the following relevant facts with regard

to this claim:

> At the start of voir dire, the court advised the panel of prospective
> jurors concerning the charge against [petitioner] and described to them the
> jury selection process. The court specifically instructed the panel that the
> sworn duty of jurors was to decide the case based on the evidence alone,
> not on emotions or on the opinions of other people. The court then asked
> the following question of the entire panel: "[I]s there anything about the
> nature of the charge or the fact that it's a criminal case that causes any of
> you to believe you could not be fair to both sides to this particular
> dispute?" Juror K responded that due to her work as a therapist, she did
> not feel that she "could be totally open."
>
> Because juror K identified herself as an expert and voiced a
> concern about her ability to remain impartial, the prosecutor asked several
> questions of her during voir dire. Some of the questions incorporated juror
> K's expertise as a therapist and allowed her to respond at length
> concerning her work with victims of traumatic events, including sexual
> assault victims and, specifically, to respond as to how such victims
> reacted to being assaulted. On two occasions, the prosecutor also asked
> other prospective jurors whether they were surprised by or disagreed with
> some of juror K's responses.

---

[3]*See* State Court R., 8/08/07 Trial Tr., at 94-95.

Defense counsel did not contemporaneously object to any of these questions or juror K's responses. However, counsel did make a record at the close of the prosecutor's voir dire, challenging juror K for cause and stating her concern that juror K could not be fair to [petitioner] and that juror K's presence on the venire risked tainting the rest of the jurors. After additional questioning of juror K by defense counsel, the court excused juror K for cause.

. . .

Juror K was not the only prospective juror to advise the court of a concern that she could not remain fair in this case. At the outset of voir dire, at least three other individuals also told the court they had had personal experiences with sexual assault. Juror B explained that she was an actual victim of sexual assault, and jurors P and S explained that they had close family members or friends who were victims of similar crimes. In each instance, these jurors, at least initially, openly told the court that they doubted their ability to set aside their own experiences and decide the case based solely on the evidence.

Consequently, both the prosecutor and defense counsel asked additional questions of jurors B, P, and S throughout voir dire. Again, [petitioner] did not contemporaneously object to any of the prosecutor's questions or the jurors' responses; nor did he request any relief other than challenging these three jurors for cause. The court ultimately excused jurors B and P for cause. As to juror S, the court denied [petitioner's] challenge for cause following rehabilitative questioning in which juror S indicated she could follow the law and the court's instructions and that she could separate her life experiences from the issue of whether [petitioner] committed the crime of sexual assault in this case. [Petitioner] ultimately used one of his peremptory challenges to excuse juror S.

[*Powell II*, Doc. # 14-4, at 12-14, 16-17].[4]

The Sixth and Fourteenth Amendments guarantee a defendant the right to an impartial jury. *Ross v. Oklahoma*, 487 U.S. 81, 85 (1988). To be "impartial," a juror must be able to "lay aside his opinion and render a verdict based on the evidence presented in court." *Patton v. Yount*, 467 U.S. 1025, 1036 n. 12 (1984). Any claim that the jury was not impartial must focus on the jurors who ultimately sat. *Ross*, 487 U.S. at

---

[4]*See also* State Court R., 8/06/07 Trial Tr., at 23-121.

86 (although trial court erred by failing to dismiss prospective juror for cause, error did not deprive petitioner of an impartial jury or of any interest provided by the State where defense exercised peremptory challenge to remove him).

This court is mindful that the state trial court retains great flexibility in conducting voir dire. *Mu'Min v. Virginia*, 500 U.S. 415, 427 (1991).  Federal habeas review is limited because "'[t]he state trial judge had the benefit of observing the general demeanor of the jurors as the basis for his general finding'" of impartiality. *Brecheen  v. Reynolds*, 41 F.3d 1343, 1350 (10th Cir. 1994) (alteration in original) (quoting *Church v. Sullivan*, 942 F.2d 1501, 1519 (10th Cir.1991)); *see also Ristaino v. Ross*, 424 U.S. 589, 594-95 (1976).

To establish a constitutional violation based on the trial court's refusal to allow individual, sequestered voir dire, or to exclude the entire panel, petitioner "must demonstrate either that the trial resulted in actual prejudice or that it gave rise to a presumption of prejudice because it involved 'such a probability that prejudice will result that it is deemed inherently lacking in due process.'" *Brecheen v. Reynolds*, 41 F.3d 1343, 1350 (10th Cir. 1994) (quoting *Estes v. Texas*, 381 U.S. 532, 542–43, 543 (1965)); *see also Lucero v. Kerby*, 133 F.3d 1299, 1308 (10th Cir. 1998).

The Colorado Court of Appeals rejected petitioner's claim on the following grounds:

> Under the circumstances of this case, we conclude that the open voir dire of juror K does not constitute plain error justifying reversal of [petitioner's] conviction.
>
> As noted above, [petitioner] did not contemporaneously object to the prosecutor's voir dire of juror K or to her responses. The record also reveals that [petitioner] did not ask the court to continue the voir dire of

juror K in camera. Nor did [petitioner] request a curative instruction, move for a mistrial, or request that the court canvass the jurors to determine whether juror K's statements had affected their ability to decide the case fairly. [State case law citations omitted]. Indeed, the court granted [petitioner's] only requested relief when it excused juror K for cause at the close of voir dire. [State case law citation omitted].

Also, the questions of juror K were couched in very general terms and did not cause her to discuss [petitioner], the alleged victim, the witnesses, or any other details of this case. [State case law citation omitted].  Contrary to [petitioner's] argument that he was prejudiced when the substance of some of juror K's responses was mirrored by expert testimony at trial, we perceive nothing in those very general questions and juror K's responses in voir dire that would have caused the jurors who ultimately decided the case to be biased or prejudiced against [petitioner].

There is also no plain error here because the trial court instructed the jurors throughout the voir dire and the trial itself to base their decision solely on the evidence adduced at trial and not on the opinions of other people. Absent any showing to the contrary, we presume that the jurors followed the court's instruction. [State case law citation omitted].

Accordingly, because the record does not demonstrate prejudice to [petitioner] that casts serious doubt as to the reliability of the conviction, we conclude that plain error in the open voir dire of juror K did not occur.
. . .

Again, the issue here is not the court's rulings on the individual challenges for cause, but rather, whether the open voir dire of prospective jurors B, P, and S improperly tainted the jury venire as a whole. Based on our review of the entire voir dire, we conclude that the trial court did not abuse its discretion by permitting the follow-up questioning of jurors B, P, and S in front of the entire jury panel. In our view, the record clearly shows the questions were designed for the proper purpose of determining whether these jurors — who had voiced their concerns about remaining impartial — were biased by their own experiences so as to prevent [petitioner] from obtaining a fair trial. We thus conclude that the open voir dire of prospective jurors B, P, and S was within the scope of permissible voir dire.

In any event, for the same reasons discussed above with respect to juror K, we conclude there is no plain error here with respect to jurors B, P, and S.  [Petitioner] suggests that the entire panel was tainted by these jurors' responses to their follow-up questions. However, [petitioner's] argument relies entirely on speculation. Importantly, [petitioner] has not

made any showing of prejudice to overcome the well-established
presumption that the jurors followed the trial court's instructions, which
here required them to decide the case on the evidence and not on their
emotions or the opinions of others. [State case law citation omitted].

[*Powell II*, Doc. # 14-4, at 14-16, 17-18].

## 1.   *Application of Procedural Default Doctrine*

Respondents argue, in a footnote to their Answer [*see* Doc. #32, at 21 n.3], that

petitioner procedurally defaulted claim two in the state courts because the Colorado

Court of Appeals resolved the claim under the state's plain error rule.  Again, I will

address the issue of procedural bar because respondents did not deliberately waive the

affirmative defense and petitioner is not prejudiced by the invocation of the defense in

respondent's Answer to the Application.  *See Ahmad*, 435 F.3d at 1202; *Wood*, 132

S.Ct. at 1834-35.

With regard to prospective Juror K, the state appellate court concluded that the

open voir dire did not constitute plain error justifying reversal of petitioner's conviction.

[Doc. #14-4, at 14-15].  However, it is not clear from the state court's analysis whether

the court's disposition of petitioner's claim was merits or non-merits based.  Under such

circumstances, I assume that the state's review is on the merits and afford it § 2254(d)

deference.  *See Douglas*, 560 F.3d at 1178.  I therefore reject respondents' procedural

bar argument as to the portion of claim two concerning the open voir dire of prospective

juror K and will review the claim on the merits.

With regard to the open voir dire of prospective jurors B, P, and S, the Colorado

Court of Appeals concluded that the trial court did not abuse its discretion by permitting

the follow-up questioning of jurors B, P, and S in front of the entire jury panel because

15

the open voir dire of those prospective jurors was within the scope of permissible voir

dire.  [Doc. # 14-4, at 17-18].  The state appellate court determined that "the questions

were designed for the proper purpose of determining whether these jurors — who had

voiced their concerns about remaining impartial — were biased by their own

experiences so as to prevent defendant from obtaining a fair trial." [*Id.* at 18].  Because

the state court determined that the claim lacked merit under federal law, the decision is

entitled to AEDPA deference and the procedural default rules do not apply. *See*

*Mathews*, 577 F.3d 1175, 1186 n. 4 (10th Cir. 2009) (citing *Cargle,* 317 F.3d at 1205-

06).   I thus will review claim two concerning the open voir dire of prospective jurors B,

P, and S on the merits.

> ## 2.      *Merits of Claim Two*

Because potential jurors K, B, P, and S did not sit on the jury that tried and

convicted petitioner, his constitutional right to an impartial jury was not violated unless

he can show actual prejudice by the jurors who sat, or that prejudice must be presumed

under the circumstances.  *See Breechen*, 41 F.3d at 1350.  Petitioner has not identified

actual prejudice on the part of any juror.  Moreover, I do not presume prejudice based

only on the fact that the trial court conducted an open voir dire of prospective jurors K,

B, P, and S, all of whom were excused before trial.  Nothing in the state court record

shows that the questioning of those prospective jurors influenced the jurors who sat for

petitioner's trial.  Furthermore, both the prosecutor and defense counsel had the

opportunity to specifically question all of the potential jurors about their ability to remain

fair and impartial in deciding the case.  "Absent evidence to the contrary, [the court

presumes] that jurors remain true to their oath and conscientiously observe the

instructions and admonitions of the court." *United States v. Easter*, 981 F.2d 1549, 1553

(10th Cir.1992); *see also Reynolds v. Bagley*, 498 F.3d 549, 555-56 (6th Cir. 2007) (any

prejudice created by statements of prospective juror, a police officer, that he knew one

of the investigators to be "completely truthful" and that the prosecutor was efficient and

demanded a lot from police before moving forward with a prosecution, was cured by trial

court's subsequent admonition to jurors that they would have to decide case for

themselves).

Lacking any evidence of prejudice, I cannot find that the decision of the Colorado

Court of Appeals was contrary to, or an unreasonable application of, clearly established

federal law.  Notably, the Supreme Court found no due process violation in two of its

most recent cases examining jury selection: (1) where eight of fourteen jurors held prior

opinions about the case, *Patton*, 467 U.S. at 1029-30, 1040; and (2) where four of

twelve jurors expressed some prejudice against the defendant, *Murphy v. Florida*, 421

U.S. 794, 801-03 (1975).  Petitioner has not shown that any of the jurors who sat

formed prior opinions about his guilt.  Accordingly, claim two is without merit.

## C. Claim Three

For his third claim, petitioner contends that the evidence was insufficient to

support his habitual criminal convictions. [Doc. # 1, at 6].  Petitioner argued on direct

appeal that he has an identical twin brother and that the prosecution failed to present

sufficient evidence to prove petitioner's identity as the person previously convicted.

[Doc. # 14-4, at 29].

Under federal law, evidence is sufficient to support a conviction as a matter of

due process if, "after viewing the evidence in the light most favorable to the prosecution,

17

*any* rational trier of fact could have found the essential elements of the crime beyond a

reasonable doubt."  *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in the

original).  In applying the *Jackson* standard, the federal habeas court looks to Colorado

law to determine whether petitioner was properly adjudicated a habitual offender.  *See*

*Turrentine v. Mullin*, 390 F.3d 1181, 1197 (10th Cir. 2004).

The Colorado Court of Appeals summarized the evidence of petitioner's prior

convictions presented to the state trial court as follows:

> [Petitioner] was charged with three habitual criminal counts based
> on allegations that he had been convicted of the following drug felonies:
> (1) unlawful distribution and sale of a controlled substance in case
> 92CR902; (2) unlawful possession of a controlled substance in case
> 92CR3272; and (3) unlawful distribution and sale of a controlled substance
> in case 93CR620.
>
> As evidence to support the habitual criminal charges, the
> prosecution offered certified court records for all three convictions in the
> form of "pen packets." These pen packets included a signed mittimus for
> each offense, with each mittimus cross-referencing the other two cases
> because the sentences in all three cases were to run concurrently. Each
> mittimus also indicated the person convicted was named David Powell,
> who was further identified by DOC inmate number 81545. Also, the pen
> packet for case 92CR902 included two photographs of the [petitioner] with
> his name (David Powell), date of birth, and the same DOC prison number
> printed below the photographs. The prosecution also offered the trial
> testimony of [petitioner's] twin brother that [petitioner] was in fact one
> "David Powell."

[Doc. # 14-4, at 31-32].[5]

At the habitual criminal trial, the state trial court found, beyond a reasonable

doubt, that petitioner was the individual who was convicted of possession of a

Schedule-Two controlled substance in case no. 92CR3272, and distribution/sale of a

---

[5]*See also* State Court R., 8/14/07 Trial. Tr.

Schedule-Two controlled substance in case no. 93CR620.[6]  However, because, in the

first habitual criminal trial in 2007, the state district court found petitioner not guilty of the

habitual criminal count based on the conviction in 92CR902, the court stated that this

finding "remains the law of the case, and jeopardy's attached with respect to that

charge."[7]

The Colorado Court of Appeals affirmed the trial court's determination on the

following grounds:

> A challenge to the sufficiency of the evidence requires a reviewing
> court to determine whether the evidence, viewed in the light most
> favorable to the prosecution, is sufficient to support a conclusion by a
> reasonable fact finder that the defendant is guilty of the crimes charged
> beyond a reasonable doubt. [State case law citations omitted]. The
> prosecution must be given the benefit of every reasonable inference that
> might fairly be drawn from the evidence. [State case law citation omitted].
> . . .
>
> [W]e perceive no error in the trial court's conclusion that the
> prosecution had carried its burden of proof as to two of the habitual
> criminal counts. The court had before it the three signed mittimuses that
> were connected to each other by their express provisions for concurrent
> sentences. Because there were two photographs establishing [petitioner's]
> identity as to one of the convictions (even though [petitioner] was
> ultimately found not guilty of the habitual criminal count based on that
> conviction), it was a reasonable inference that [petitioner] had also
> received the other two convictions due to the fact that all three sentences
> were to run concurrently.  In our view, the court then properly relied on the
> testimony of [petitioner's] twin brother and on the court's own observations
> of [petitioner] during the jury trial to conclude that [petitioner] was indeed
> the same man depicted in the photographs. Notwithstanding the court's
> comment that the photographs could theoretically be [petitioner's] twin
> brother, the court ultimately made a finding of identity based on its direct
> observations of the twin brothers in the courtroom that "[t]his picture
> appears to be David Powell" and "[t]here's no indication that it's not David

---

[6]*Id.* at 45-50.

[7]*Id.* at 33, 45.

Powell but perhaps his brother."

Accordingly, we conclude that the evidence was sufficient to establish a chain of identity proving beyond a reasonable doubt that [petitioner] was the person convicted in two of the prior felony drug cases on which the habitual criminal counts were based.

[*Powell II*, Doc. # 14-4, at 31, 33-34].

The Colorado Court of Appeals rejected petitioner's challenge to the sufficiency of the evidence based on its application of a state law standard similar to the federal standard discussed in *Jackson*.  It's decision therefore was not contrary to federal law. Furthermore, petitioner has failed to rebut the presumption of correctness accorded to the state appellate court's factual findings.  I find that the state appellate court reasonably determined, based on the evidence presented at the habitual criminal trial, that the prosecution's evidence was sufficient to prove the fact of petitioner's two prior felony convictions under Colorado law.

To the extent petitioner is complaining of a violation of state evidence rules, "[g]enerally speaking, a state court's misapplication of its own evidentiary rules . . . is insufficient to grant habeas relief." *Bullock v. Carver*, 297 F .3d 1036, 1055 (10th Cir. 2002).  Petitioner has not shown that the evidence relied on by the prosecution rendered the habitual criminal trial fundamentally unfair. *Id.*

In sum, I find no merit to petitioner's third claim.

## IV. CONCLUSION

I respectfully RECOMMEND that the Application be DENIED.[8]

---

[8]Pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), the parties have 14 days after service of this recommendation to serve and file specific, written objections. A party's failure to serve and file specific, written objections waives de novo

DATED September 17, 2013, at Denver, Colorado.

BY THE COURT:

 s/ Boyd N. Boland
United States Magistrate Judge

---

review of the recommendation by the district judge, Fed. R. Civ. P. 72(b); *Thomas v. Arn*, 474 U.S. 140, 147–48 (1985), and also waives appellate review of both factual and legal questions. *In re Key Energy Resources Inc.*, 230 F.3d 1197, 1199–1200 (10th Cir. 2000). A party's objections to this recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review. *United States v. One Parcel of Real Property*, 73 F.3d 1057, 1060 (10th Cir. 1996).